IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| JUAN M. ESPINOZA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 05-739-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Max Rae
P. O. Box 7790
Salem, Oregon 97303

    Attorney for Plaintiff

Karin J. Immergut
United States Attorney
District of Oregon
Neil J. Evans
Assistant United States Attorney
1000 S. W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

Page 1 - OPINION AND ORDER

Stephanie R. Martz
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

      Attorneys for Defendant

KING, Judge:

Plaintiff Juan Espinoza brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI").  I reverse the decision of the Commissioner.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability.  42 U.S.C. § 423(a)(1).  In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act.  42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months.  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind

of substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability.  The claimant has the burden of proof on the first four steps.  Bustamante v. Massanari, 262 F.3d 949, 953 (9th Cir. 2001); 20 C.F.R. §§ 404.1520 and 416.920.  First, the Commissioner determines whether the claimant is engaged in "substantial gainful activity."  If the claimant is engaged in such activity, disability benefits are denied.  Otherwise, the Commissioner proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments.  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work which he or she performed in the past, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(e) and 416.920(e).

Page 3 - OPINION AND ORDER

If the claimant is unable to perform work performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience. The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities. Bustamante, 262 F.3d at 954. The claimant is entitled to disability benefits only if he is not able to perform other work. 20 C.F.R. §§ 404.1520(f) and 416.920(f).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Barnhart, 359 F.3d 1190, 1193 (9th Cir. 2003) (internal citations omitted).

## THE ALJ'S DECISION

The ALJ found that Espinoza had a severe impairment of a seizure disorder. Espinoza's treating neurologist, Dr. Mark Gabr, and the testifying medical expert, Dr. Lawrence Duckler, both believe that Espinoza likely suffered from pseudoseizures, which have a psychological cause. The ALJ gave substantial weight to their opinions and found that Espinoza did not meet or equal the listings in step three of the analysis. The ALJ found Espinoza's statements concerning his limitations to be only partially credible. The ALJ stated, "I believe he believes he has a seizure disorder. I also believe he would work if he could." Tr. 28. The ALJ gave very

little weight to the lay statements of Espinoza's wife and uncle. He found that Espinoza had no exertional limitations but would have to avoid hazardous materials and heights. Based on the testimony of a vocational expert, the ALJ concluded that Espinoza could perform his past relevant work and thus was not disabled under the Act.

## FACTS

Espinoza, who was 35 at the time of the ALJ's decision, received a fifth grade education in Mexico prior to coming to the United States. He cannot read or write in English and has limited English speaking skills. Espinoza has worked as a seasonal farm laborer, a cannery worker, a recycled paper laborer, and a Christmas tree planter. Espinoza alleges he became disabled on January 6, 2003 due to a seizure disorder. He was fired from his job on that date because his employer believed the seizures caused a safety issue. Another seasonal employer also decided not to rehire Espinoza for his safety and the safety of others.

Espinoza began having seizures when he was seven years old, according to the history in some medical reports, or in his late teens, according to Espinoza. He is treated with antiseizure medications but the seizures never completely stopped. Espinoza has had seizures in front of medical personnel. At the hearing on September 2, 2004, Espinoza and his wife testified that he was currently having four to five seizures a month. He experiences the seizures as getting tense, losing control, staying frozen for a little bit, and falling backwards. Espinoza has hurt himself during seizures when he has fallen onto something dangerous, such as the time he fell onto the stove and was badly burned by a pan of boiling water. The seizures last four to five minutes. Espinoza does not remember having the seizure afterwards. The effects of the seizures stop 10 to 15 minutes after the seizure ends.

Page 5 - OPINION AND ORDER

Espinoza's wife described the seizures as follows:

> When it – he gets kind of yellow, pale. He starts moving his hands a lot and then he'll fall back. And he will grab onto something really tight. Sometimes he'll be squeezing so hard he'll break things because of it. I'll try to speak to him and talk to him, but he's pretty much unconscious. And he – in order to recuperate he'll be sitting there for like five, ten minutes. He starts making – he starts talking stuff that doesn't make sense sometimes and he kind of wants to get up and go outside.

Tr. 474.

Dr. Gabr's chart notes document the variance in the number of seizures suffered by Espinoza. On January 24, 2003, Dr. Gabr noted:

> This patient had the same type of complaints years ago when he was evaluated in 1999 and the possibility of superimposed pseudoseizures certainly exist, especially in view of his low therapeutic Carbamazepine level and the fact that he is taking two potent antiepileptic drugs without response. To give him the benefit of the doubt, we will replace the Gabritil with Neurontin in addition to his Tegretol. I still believe that most likely he is having pseudoseizures and for that reason I believe he should be allowed to work his [sic] fulltime without any problem.

Tr. 191.

On March 26, 2003, Dr. Gabr completed a Seizure Questionnaire, stating that he believes that 70% of Espinoza's seizures are pseudoseizures, that the others are complex partial seizures with transient post-ictal behavior and automatisms, and that Espinoza was having two to four seizures a month at that time. Dr. Gabr noted on August 29, 2003 that Espinoza suffered two to three seizures a week. The frequency rose to six a week and then by December 5, 2003, dropped to one a week after a medication change.

Dr. Whitson became Espinoza's primary care physician in 2003. His chart notes document Espinoza's reports of having as many as one or two seizures a day in November 2003, prior to a medication change.

## DISCUSSION

The Commissioner concedes that the ALJ did not adequately address several issues: (1) whether Espinoza's impairment meets or equals a listing; (2) the lay evidence concerning the nature and duration of the seizures and the seizures' sequelae; (3) Espinoza's testimony; (4) Espinoza's residual functional capacity; and (5) Espinoza's ability to perform his past relevant work.

The Commissioner asks that I remand the case for further proceedings. She contends that in addition to correcting the conceded errors, the ALJ should obtain a mental health assessment to determine if Espinoza has a mental impairment.

Espinoza asks me to remand the case for a finding of disability. He contends that when his testimony and the testimony of his wife and the other lay witnesses is properly considered, there is no question that he satisfies either Listing 11.02 for Epilepsy – convulsive epilepsy, Listing 11.03 for Epilepsy – nonconvulsive epilepsy, or Listing 12.07 for Somatoform Disorders which include psychogenic seizures. Alternatively, Espinoza contends that the testimony shows that he would miss two or more days of work a month, a level the vocational expert testified would preclude competitive employment.

The court has the discretion to remand the case for additional evidence and findings or to award benefits. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). The court should credit evidence and immediately award benefits if the ALJ failed to provide legally sufficient reasons

Page 7 - OPINION AND ORDER

for rejecting the evidence, there are no issues to be resolved before a determination of disability can be made, and it is clear from the record that the ALJ would be required to find the claimant disabled if the evidence is credited. Id. If this test is satisfied, remand for payment of benefits is warranted regardless of whether the ALJ might have articulated a justification for rejecting the evidence. Harman v. Apfel, 211 F.3d 1172, 1178-79 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000).

There are unresolved issues here. The ALJ did not adequately explore the precise nature of the seizures to be able to write a detailed description of a typical seizure pattern, to determine whether there is a loss of consciousness or only an alteration of awareness, and to document the post-ictal manifestations of unconventional behavior, all as required by the epilepsy listings. I realize that this is complicated by the language problems, as noted in some of the treating doctor's chart notes, but careful questioning of Espinoza and his wife is needed to properly make this determination. The ALJ should consider whether a neurological examination, with a competent interpreter, should be performed. I also note that Dr. Gabr only attributed 70% of the seizures as pseudoseizures, a fact that the medical expert missed and which might have affected the expert's opinion on whether Espinoza meets or equals the epilepsy listings. Finally, I agree with the Commissioner that a psychological examination is needed to consider the somatoform listing.

Two of Espinoza's employers sent him home when they realized that he had a seizure at work. Thus, the subject of the number of seizures and their affect on Espinoza's ability to work, in the mind of a typical employer, should be explored more with the vocational expert. I agree with the ALJ that the issue of whether employers are violating the Americans with Disabilities

Page 8 - OPINION AND ORDER

Act is not relevant to the disability determination here.  But I do not see how the issue of whether Espinoza is employable, in spite of the possibility of having seizures at work, differs from the issue of whether an employer would retain an employee who misses work twice a month due to other illness.  A related issue is the employability of someone who would need unscheduled breaks of at least 20 minutes for a seizure and recovery time.  Accordingly, I remand the case for further proceedings.

## CONCLUSION

Defendant's Motion to Remand (#13) is granted in part.  The decision of the Commissioner is reversed.  This action is remanded to the Commissioner under sentence four of 42 U.S.C. § 405(g) for rehearing to further develop the record as explained above.  Judgment will be entered.

IT IS SO ORDERED.

Dated this _____6th_____ day of April, 2006.

                                                                    /s/ Garr M. King_____
                                                          Garr M. King
                                                          United States District Judge